Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 10, 2003       Decided July 1, 2003

No. 02-7125

BOMBARDIER CORPORATION,
APPELLEE

v.

NATIONAL RAILROAD PASSENGER CORPORATION,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02335)

———

*Leslie Gordon Fagen* argued the cause for appellant. With him on the brief were *Robert P. Parker*, *Timothy F. Brown* and *Richard J. Webber*. *Evan S. Stolove* entered an appearance.

*Philip Le B. Douglas* argued the cause and filed the brief for appellee.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: Sᴇɴᴛᴇʟʟᴇ, Rᴏɢᴇʀs and Gᴀʀʟᴀɴᴅ, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Sᴇɴᴛᴇʟʟᴇ.

Sᴇɴᴛᴇʟʟᴇ, *Circuit Judge*: National Railroad Passenger Corporation brought this interlocutory appeal from the district court's denial of a motion to dismiss. Amtrak attempts to invoke Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16 (2000), which permits interlocutory appeal in enumerated cases. Because we conclude that this appeal does not fall within the parameters of the limited grant of jurisdiction under Section 16, we dismiss the appeal.

Background

In May 1996 appellant, National Railroad Passenger Corporation ("Amtrak"), entered into three contracts with a consortium of contractors including appellee Bombardier Corporation for the design and manufacture of twenty Acela high-speed trainsets and various maintenance facilities; the design and manufacture of fifteen high-speed locomotives; and maintenance of Acela trains for ten years. Each of the contracts contains dispute resolution provisions for claims "arising from or relating to the contract." According to these provisions, initially, all claims are referred to the Contracting Officer's Representative for a non-binding determination. If Bombardier finds that determination unsatisfactory, it may appeal to the Contracting Officer, whose decision is final and binding as to all matters except money damages and rulings as to whether services or work required by a change order is outside the general scope of the contract. Bombardier is entitled to appeal these types of issues to a three-member dispute resolution board, composed of one member of its choosing, one of Amtrak's choosing and a chairman selected by those two appointed members. The board's decisions are binding only in disputes involving amounts of less than $5 million. With respect to claims for more than $5 million, the board's determination is binding only if the parties agree to it. The board's determination of the size of the dispute is final and binding. Finally, the contract provides that if the parties are unable to resolve their disputes through the board or negotiation, they may pursue their rights "in law or in

equity with respect to any Claim for which a final and binding decision has not been issued."

Both Amtrak and Bombardier have recognized that the design and construction of the Acela trainsets has been delayed and complicated by the numerous disputes between them. Bombardier claims that Amtrak repeatedly changed its design specifications; supplied defective designs; meddled in the design and construction process; and withheld progress payments. Amtrak claims that Bombardier violated the terms of the contracts by delivering the trainsets late. In March 2000, the parties began settlement negotiations and Amtrak submitted a portion of the dispute, involving Bombardier's failure to deliver, to the initial stages of the contractually provided-for dispute resolution procedures. Both the Contracting Officer's Representative and the Contracting Officer found in favor of Amtrak, but when Bombardier requested that a dispute resolution board be empaneled pursuant to the contract provisions, Amtrak refused, claiming such a board would have no jurisdiction under the contract because of the nature of the dispute.

On November 8, 2001, Bombardier filed this action in the district court seeking more than $200 million in damages caused by Amtrak's alleged changes to the contracts, and Amtrak filed a counterclaim for $200 million. On December 3, 2001, Amtrak moved to dismiss the claim pursuant to Rule 12(b)(6), on the grounds that Bombardier had not exhausted the contract's dispute resolution procedures, which it argued were a condition precedent to litigation. Amtrak's motion to dismiss did not expressly argue that the contract contained an arbitration clause enforceable under the Federal Arbitration Act ("FAA"), although the motion contained some passing references to arbitration and cited several FAA cases. The district court denied the motion to dismiss. *See Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, Civ. No. 01–2335 (D.D.C. Sept. 30, 2002). The court held that the contract's dispute resolution procedures were essentially non-binding mediation clauses, not a condition precedent to litigation. Further, the court reasoned that sending the parties to dispute resolution would be futile and inefficient, given the board's inability to

issue binding awards of more than $5 million. *See id.* at 5–7; 10.

On October 11, 2002, Amtrak appealed that decision, invoking Section 16 of the FAA, 9 U.S.C. § 16, which permits, in defined categories of cases, the immediate appeal of orders hostile to arbitration, whether the orders are final or interlocutory. Amtrak then filed a motion for stay pending appeal, which the district court denied on the grounds that the contract's dispute resolution procedure was not "arbitration" as covered by the FAA. Amtrak then moved for a stay in this court. We entered an order denying such a stay as unnecessary, because Amtrak's appeal of the motion to dismiss was facially non-frivolous and thus the district court was divested of jurisdiction over the underlying action until we could determine the threshold issue of whether the dispute between the parties is arbitrable under the FAA. *See Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, No. 02–7125 (D.C. Cir. Dec. 12, 2002). Because we find that we have no jurisdiction to hear the interlocutory appeal in this case, we hereby dismiss that appeal.

Analysis

We review denials of motions to dismiss *de novo*. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The posture of this case requires that before we can examine whether the district court was correct in dismissing the motion, we must determine whether we have appellate jurisdiction to hear such an appeal pursuant to Section 16 of the FAA. That section provides the following in pertinent part:

(a) An appeal may be taken from—
  (1) an order—

    (A) refusing a stay of any action under section 3 of this title,

    (B) denying a petition under section 4 of this title to order arbitration to proceed,

> (C) denying an application under section 206 of this title to compel arbitration,
>
> (D) confirming or denying confirmation of an award or partial award, or
>
> (E) modifying, correcting, or vacating an award;
>
> (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
>
> (3) a final decision with respect to an arbitration that is subject to this title.

9 U.S.C. § 16(a).

Generally, courts of appeal have appellate jurisdiction over only "final decisions" of the district courts. 28 U.S.C. § 1291 (2000). Ordinarily, orders denying motions to dismiss are not final decisions because such orders ensure that litigation will continue in the district court. *See Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498 (1989); *United States v. Rose*, 28 F.3d 181, 185 (D.C. Cir. 1994). Therefore, we would not have jurisdiction to hear Amtrak's appeal, absent the applicability of a statute granting appellate authority, such as the provision above.

First, we recognize that Section 16 is a limited grant of jurisdiction. In general, statutes authorizing appeals should be narrowly construed. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 43 (1983); *accord Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 247 (1984), and *Stone v. INS*, 514 U.S. 386, 405 (1995). This principle is particularly well-applied to the statute at issue here because it authorizes not only appellate jurisdiction, but in some cases, interlocutory appeals which constitute exceptions to the final decision rule of Section 1291.

Under the plain language of Section 16, the district court's order denying the Rule 12(b)(6) motion to dismiss is not one of those enumerated under Section 16(a)(1) or (2), allowing for interlocutory appeal, and therefore, this court lacks jurisdiction to consider this appeal. Amtrak's motion to dismiss was neither a motion to compel arbitration under 9 U.S.C. § 4

nor a motion to stay arbitration under 9 U.S.C. § 3. The order denying the motion was certainly not a final decision, qualifying for appellate review under Section 16(a)(3), because it did not "end[ ] the litigation on the merits and leave[ ] nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000) (quotation omitted). Despite the plain language of the statute Amtrak argues that dicta from the Supreme Court's decision in *Green Tree* demonstrates that this court does indeed have jurisdiction over an appeal of the district court's order denying its motion to dismiss.

In *Green Tree*, in contrast to the facts of this case, the Court considered whether an order granting, not denying, a motion to dismiss for failure to arbitrate and compelling arbitration was a "final decision with respect to arbitration" under Section 16(a)(3). *Green Tree*, 531 U.S. at 83–84. The Court defined "final decision" as quoted above, and thus held that an order dismissing the action falls within the meaning of Section 16(a)(3). *Id.* at 89. The Court also observed that Section 16 "generally permits immediate appeal of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeal of interlocutory orders favorable to arbitration." *Id.* at 86.

Amtrak argues that the Court's dicta indicates that any order hostile to arbitration may be immediately appealed, even if the type of order is not enumerated in Section 16. We disagree. Amtrak's interpretation of *Green Tree* would significantly and improperly expand not only the scope of Section 16, but of the Court's opinion. The Court merely observed that Section 16 "*generally* permits" the appeal of orders hostile to arbitration, *Green Tree*, 531 U.S. at 86 (emphasis added), and indeed, the statute plainly permits the appeal of six types of such orders. *See* 9 U.S.C. § 16(a)(1)(A)-(E), (a)(2). Despite its careful enumeration of appealable orders, Congress did not include the denial of a motion to dismiss. The Supreme Court did not attempt to rewrite the FAA in *Green Tree*, and nor will we now. The plain language of the statute precludes Amtrak's interlocutory appeal.

Amtrak also argues that we should "treat" its motion to dismiss as a motion to compel arbitration or a motion to stay proceedings pending arbitration. The principle of narrow construction we apply to statutes authorizing appeals counsels against broad construction of a motion forwarded for review under such a statute. However, even if we were to construe a motion to dismiss more broadly in some circumstances, the current case does not present a set of facts favoring broad construction. A motion to compel under 9 U.S.C. § 4 or stay under 9 U.S.C. § 3, by definition, invokes the FAA's policy favoring enforceability of arbitration agreements and asks the Court to order arbitration, presupposing the party's intent to arbitrate its disputes. Amtrak's motion did neither, therefore, it was not analogous to either of those motions, and we will not treat it as if it were.

Amtrak did not base its motion to dismiss on the FAA's requirement that arbitration agreements be strictly enforced. It sought an outright dismissal under 12(b)(6) on the grounds that Bombardier failed to comply with the dispute resolution procedures, which it did not contend was arbitration. In the memorandum supporting its motion, Amtrak repeatedly referred to the contractually provided procedures, but never as arbitration. Neither did it suggest that the procedures were covered by the FAA. More importantly, unlike a motion to compel or stay under the FAA, Amtrak's motion exhibited no intent to pursue arbitration—indeed, it sought outright dismissal with no guarantee of future arbitration. Therefore, we decline to "treat" Amtrak's motion as anything other than what it was—a motion for dismissal under 12(b)(6).

Conclusion

We therefore dismiss the appeals for lack of jurisdiction because the district court's order denying Amtrak's motion to dismiss is not among those types of orders entitled to appeal under Section 16 of the FAA.