Opinion for the Court in part filed by Circuit Judge RANDOLPH, an opinion in which Chief Judge GINSBURG and Circuit Judges HENDERSON and TATEL join.
Opinion concurring in part and in the judgment filed by Circuit Judge ROGERS.
Concurring opinion filed by Circuit Judge TATEL.
Opinion concurring in the judgment filed by Circuit Judge BROWN, with whom Circuit Judges SENTELLE and GRIFFITH join.
RANDOLPH, Circuit Judge.
Article I, section 6 of the Constitution provides that “for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place.” We ordered these two appeals to be argued together en banc in order to determine whether the Speech or Debate Clause requires dismissal of these suits brought under the Congressional Accountability Act of 1995, 2 U.S.C. §§ 1301-1438, and whether Browning v. Clerk, U.S. House of Representatives, 789 F.2d 923 (D.C.Cir.1986), should remain the law of this circuit.
I.
No. 04-5315 is an appeal from a district court order denying a motion to dismiss a complaint alleging that the Office of Representative Eddie Bernice Johnson discriminated against Beverly A. Fields because of her race and gender and retaliated against her for objecting to discriminatory conduct. No. 04-5335 is an appeal from a district court order denying a motion to dismiss a complaint alleging that the Office of Senator Mark Dayton discriminated against Brad Hanson because of a perceived disability and violated the Fair Labor Standards Act. The Office of Representative Johnson and the Office of Senator Dayton (collectively, the “Member Offices”) claim that the Speech or Debate Clause immunizes them from these suits and that the district court should have dismissed the complaints for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[1]
A.
Fields and Hanson each sued under the Accountability Act. The Act confers on “covered employees” rights and remedies drawn from various labor and employment statutes not previously applicable to the legislative branch.[2] 2 U.S.C. § 1302(a); *5 see id. §§ 1311-1316, 1331, 1341, 1351. It also includes an anti-retaliation provision that prohibits “an employing office” from “intimidating], tak[ing] reprisal against, or otherwise discriminating] against, any covered employee because the covered employee has opposed” or reported “any practice made unlawful” by the Accountability Act. Id. § 1317(a). A “covered employee” is an individual employed by the House of Representatives, the Senate, or some other office specifically enumerated in the statute. Id. § 1301(3).[3]
Section 1404(2) creates a cause of action for covered employees to sue in federal court for violations of the Accountability Act. Section 1408(a) vests the “district courts of the United States” with “jurisdiction over any civil action commenced under section 1404.” Before initiating such an action, the employee must seek counseling by, and mediation with, the Office of Compliance, id. § 1408(a); see §§ 1402-1403, “an independent office within the legislative branch,” id. § 1381(a). Thereafter, the employee may bring an action against “the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred.” Id. § 1408(b). An “employing office” for these purposes includes “the personal office of a Member of the House of Representatives or of a Senator.” Id. § 1301(9)(A).
Fields, an African American female and the plaintiff in No. 04-5315, served as Representative Johnson’s chief of staff from January 2002 until her discharge in early 2004. The parties agree that as chief of staff, Fields was deeply involved in a wide array of Representative Johnson’s legislative work. Fields’s complaint alleged as follows. Elisabeth Howie, a “Black Latino,” worked as an executive assistant and scheduler for the Office of Representative Johnson. In April 2003, the office decided to replace Howie with “an Asian person under the age of 40.” Fields objected, but her objections were rebuffed, and she was directed to give Howie one day’s notice that she was being terminated.
After Fields made her objections to Howie’s termination known around the office, her co-workers began falsely accusing her of poor performance. Fields alleged they did so because they wanted “a Caucasian male rather than an African American female” to be Representative Johnson’s chief of staff. Their efforts eventually succeeded when the Office of Representative Johnson promoted a non-African American male employee to chief of staff and demoted Fields to administrative assistant. The Office of Representative Johnson increased the new chief of staffs salary by approximately $10,000 — something it failed to do for Fields despite promising her a salary increase when she was chief of staff.
Fields filed an employment discrimination complaint with the Office of Compliance on December 18, 2003, and began the required counseling and mediation. While this was going on, the Office of Representative Johnson “initiated a bad faith and bogus investigation of plaintiffs conduct as an employee ... to embarrass plaintiff before her co-workers and to force plaintiff to resign from her employment position.” When Fields refused either to drop her discrimination claims or to resign, she was abruptly terminated. In response to this additional retaliation, Fields filed a second employment discrimination complaint with the Office of Compliance on March 11, *6 2004, and again complied with the counseling and mediation requirements.
After exhausting her administrative remedies, Fields sued the Office of Representative Johnson under the Accountability Act. She alleged racial and gender discrimination in violation of 2 U.S.C. § 1311(a)(1) (incorporating § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2), equal pay discrimination in violation of 2 U.S.C. § 1313(a)(1) (incorporating §§ 6(a)(1) and (d), 7, and 12(c) of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206(a)(1), (d), 207, 212(c)), and two counts of retaliation in violation of 2 U.S.C. § 1317(a). The Office of Representative Johnson moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), asserting immunity from suit under the Speech or Debate Clause. The district court denied the motion to dismiss without explanation. After ordering en banc review, we granted Representative Johnson’s motion to intervene for the limited purpose of asserting her Speech or Debate Clause immunity.
Brad Hanson, the plaintiff in No. 04-5335, joined Senator Dayton’s Senate campaign in July 2000 and began serving as State Office Manager in Senator Dayton’s Ft. Snelling, Minnesota, office upon the Senator’s election to office. Hanson’s complaint alleged as follows. Hanson’s work for Senator Dayton centered on “setting up the Senator’s three local offices in Minnesota” and overseeing “the transition of the Health Care Help Line to Senator Dayton’s personal Senate office.”[4] The Health Care Help Line “offered assistance to people having difficulties with their health insurance carriers, HMO’s or physicians.” This work often required Hanson, an employee entitled to overtime pay under the Fair Labor Standards Act, to work overtime. The Office of Senator Dayton never paid him for this overtime, even though the Office “recognized” his “effectiveness” by increasing his salary and paying him a bonus in January 2002.
Hanson began experiencing cardiac arrhythmia early in 2002. His physician advised him to undergo a coronary ablation. The surgery would require only a short hospital stay, but Hanson would need two to three weeks away from work to recover. Hanson informed his co-workers that he needed heart surgery and arranged a short meeting with Senator Dayton on July 3, 2002, in the Ft. Snelling office to share the news with him. “The meeting had not gone on for more than five minutes when the Senator abruptly told Hanson, You’re done,’ ” without explanation. Senator Dayton told Hanson to stop reporting to the office and to take medical leave instead. Matt McGowan, Senator Dayton’s Washington Office Manager, later called Hanson at home to inform him that “he would be terminated as of September 30.” Hanson then underwent coronary ablation and fully recovered.
Hanson sued the Office of Senator Dayton under the Accountability Act after exhausting his administrative remedies. His complaint accused the Office of Senator Dayton of violating 2 U.S.C. § 1312(a) (incorporating §§ 101-105 of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2611-2615), discriminating against him on the basis of a perceived disability in violation of 2 U.S.C. § 1311(a)(3) (incorporating § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, and §§ 102-104 of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12114), and failing to pay him overtime compensation in *7 violation of 2 U.S.C. § 1313 (incorporating the aforementioned provisions of the Fair Labor Standards Act). The Office of Senator Dayton asserted immunity from suit under the Speech or Debate Clause and moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[5] The district court denied the motion without explanation.
B.
Relying on Browning v. Clerk, U.S. House of Representatives, 789 F.2d 923 (D.C.Cir.1986), the Member Offices argue that the district court lacked jurisdiction and should have dismissed these suits because the Speech or Debate Clause immunizes them from suits challenging personnel decisions concerning employees like Fields and Hanson who assist Members in performing legislative functions.
In Browning, a former employee of the House of Representatives sued the Speaker and other House officers for employment discrimination. Id. at 924 & n. 2. Browning was “the first black Official Reporter employed by the United States House of Representatives.” Id. at 924. She claimed that despite some poor performance on the job, “the true reason behind her dismissal was racial animus.” Id. We held that a Member’s personnel decision is shielded from judicial scrutiny when “the [affected] employee’s duties were directly related to the due functioning of the legislative process.” Id. at 929 (emphasis removed).
Later decisions cast doubt on Browning. Two years after Browning, the Supreme Court ruled that a state-court judge did not have “absolute immunity from a suit for damages under 42 U.S.C. § 1983 for his decision to dismiss a subordinate court employee.” Forrester v. White, 484 U.S. 219, 220, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The Court described its “absolute official immunity” jurisprudence as “quite sparing,” citing as examples legislative immunity under the Speech or Debate Clause and presidential immunity under Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). Forrester, 484 U.S. at 224-25, 108 S.Ct. 538.[6] Consistent with the narrowness of absolute immunity in these contexts, the Court explained that judges are entitled to absolute immunity only for “judicial acts,” not “administrative, legislative, or executive functions,” id. at 227, 108 S.Ct. 538, no matter how “essential” such functions may be “to the very functioning of the courts,” id. at 228, 108 S.Ct. 538. The Court then concluded that the employment decision in Forrester was an administrative, not a judicial, act and that the state-court judge therefore was not entitled to absolute immunity. Id. at 229-30, 108 S.Ct. 538.
Gross v. Winter, 876 F.2d 165 (D.C.Cir.1989), presented the question whether common law legislative immunity exempted a D.C. Councilmember’s personnel decisions from judicial review. We recognized that Browning’s focus on “the duties of the employee” as the “ultimate issue” was “unquestionably [in] tension” with Forrester, “which accords no weight to the duties of the employee.” Winter, 876 F.2d at 170 (quoting Browning, 789 F.2d at 928) (internal quotation mark omitted; emphasis *8 removed). We found “Forrester, not Browning, controlling” and concluded that “the functions judges and legislators exercise in making personnel decisions affecting [probation officers and legislative aides, respectively] are administrative, not judicial or legislative.” Id. at 172.
Now a conflict in the circuits has developed. In Bastien v. Office of Senator Ben Nighthorse Campbell, 390 F.3d 1301 (10th Cir.2004), cert. denied, — U.S. -, 126 S.Ct. 396, 163 L.Ed.2d 274 (2005), a case brought under the Accountability Act, the Tenth Circuit held that the Speech or Debate Clause bars judicial review of a Senator’s allegedly discriminatory personnel decision only when the plaintiffs claim “question[s] the conduct of official Senate legislative business.” Id. at 1304 (emphasis added). The court was “hesita[nt] to embrace th[e] test” we employed in Browning, which it considered inconsistent with the Supreme Court’s Speech or Debate Clause jurisprudence. Id. at 1318-19.
II.
The Accountability Act allows an employee of the House or Senate to recover damages and seek injunctive relief from a Member’s personal office “alleged to have committed [a] violation [of the Accountability Act], or in which the violation is alleged to have occurred.” 2 U.S.C. § 1408(b); id. § 1301(3), (9); see, e.g., id. §§ 1311(b)(1), 1312(b), 1313(b).[7] Congress thereby unequivocally waived the sovereign immunity of a Member’s personal office facing such allegations. See Lane v. Peña, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Congress also provided in § 1413 that § 1408 “shall not constitute a waiver of sovereign immunity for any other purpose, or of the privileges of any Senator or Member of the House of Representatives under article I, section 6, clause 1, [the Speech or Debate Clause] of the Constitution.” The Accountability Act therefore does nothing to a Member’s Speech or Debate Clause immunity, and we must determine how that immunity operates in suits under the Accountability Act.
The Speech or Debate Clause reinforces the separation of powers and protects legislative independence. See Eastland v. U.S. Servicemen’s Fund, 421 U.S. 491, 502, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (quoting United States v. Brewster, 408 U.S. 501, 507, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); United States v. Johnson, 383 U.S. 169, 178, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966)); Gravel v. United States, 408 U.S. 606, 616, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); Powell v. McCormack, 395 U.S. 486, 503, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Tenney v. Brandhove, 341 U.S. 367, 373, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).[8] As to the judicial branch, the *9 Clause can protect Members “from inquiry into legislative acts or the motivation for actual performance of legislative acts,” Brewster, 408 U.S. at 508, 92 S.Ct. 2531, “from the burden of defending” certain suits, Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam), and “from the consequences of litigation’s results,” id. See United States v. Helstoski, 442 U.S. 477, 487, 489, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979); Doe v. McMillan, 412 U.S. 306, 318, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); Powell, 395 U.S. at 502-03, 505, 89 S.Ct. 1944; Johnson, 383 U.S. at 173, 86 S.Ct. 749; Tenney, 341 U.S. at 377, 71 S.Ct. 783. In each case, the Clause must be applied “in such a way as to insure the independence of the legislature without altering the historic balance of the three co-equal branches of Government.” Brewster, 408 U.S. at 508, 92 S.Ct. 2531.
The parties accept these principles and urge us to resolve broad questions related to suits under the Accountability Act: can a Member’s personal office invoke the Speech or Debate Clause on the Member’s behalf, as legislative aides and committees can?[9] is' a personnel decision always an administrative act,[10] or could a personnel decision be a legislative act in certain circumstances? [11] and so forth. “These are perplexing questions. Their difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case[s].” Whitehouse v. Ill. Cent. R.R. Co., 349 U.S. 366, 372-73, 75 S.Ct. 845, 99 L.Ed. 1155 (1955); see Longshoremen v. Boyd, 347 U.S. 222, 224, 74 S.Ct. 447, 98 L.Ed. 650 (1954). We therefore begin with the validity of our decision in Browning.
A.
The Speech or Debate Clause protects a Member’s conduct if it is an integral “part of ... the due functioning of the [legislative] process.” Brewster, 408 U.S. at 516, 92 S.Ct. 2531 (emphasis removed); accord Gravel, 408 U.S. at 625, 92 S.Ct. 2614. The Clause obviously covers core legislative acts — “how [a Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee.” Brewster, 408 U.S. at 526, 92 S.Ct. 2531; see also Bastien, 390 F.3d at 1314.[12] But the Supreme Court has long *10 held that the Clause does more.[13] It protects acts that are “an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.” Gravel, 408 U.S. at 625, 92 S.Ct. 2614. And the Clause provides further protection in precluding “inquiry ... into the motivation for” acts “that occur in the regular course of the legislative process.” Helstoski, 442 U.S. at 489, 99 S.Ct. 2432 (quoting Brewster, 408 U.S. at 525, 92 S.Ct. 2531); accord Johnson, 383 U.S. at 180, 86 S.Ct. 749. In defining these categories of protected conduct, the Court has been careful not “to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process.” Brewster, 408 U.S. at 516, 92 S.Ct. 2531. The Speech or Debate Clause therefore “does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions,” id. at 528, 92 S.Ct. 2531 (emphasis added), or because it is merely “related to,” as opposed to “part of,” the “due functioning” of the “legislative process,” id. at 514, 92 S.Ct. 2531 (emphasis removed).
Fields and Hanson contend that personnel decisions never can be “an integral part of the deliberative and communicative processes” in which Members engage as legislators, Gravel, 408 U.S. at 625, 92 S.Ct. 2614, because personnel decisions never have more than merely “some nexus to legislative functions,” Brewster, 408 U.S. at 528, 92 S.Ct. 2531; see id. at 513-16, 92 S.Ct. 2531. We agree that some personnel decisions would not qualify. The legislative process at the least includes “delivering an opinion, uttering a speech, or haranguing in debate”;[14] proposing legislation;[15] voting on legisla *11 tion;[16] making, publishing, presenting, and using legislative reports;[17] authorizing investigations and issuing subpoenas;[18] and holding hearings and “introducing material at Committee hearings.”[19] Many personnel decisions by Members’ personal offices lack even “some nexus,” Brewster, 408 U.S. at 528, 92 S.Ct. 2531, to these types of legislative acts. Firing an aide for falsifying expense reports, or disciplining an assistant for harassing others in the office is “not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of a legislator.” Brewster, 408 U.S. at 526, 92 S.Ct. 2531.
Browning nevertheless held that the Speech or Debate Clause protects those personnel decisions taken with respect to employees whose duties are “directly related to the due functioning of the legislative process.” Browning v. Clerk, U.S. House of Representatives, 789 F.2d 923, 929 (D.C.Cir.1986) (emphasis removed). We now see that an employee’s duties are too crude a proxy for protected activity. Our holding in Browning presumes that a personnel decision with regard to an employee whose duties are “directly related to the due functioning of the legislative process,” Browning, 789 F.2d at 929 (emphasis removed), is always “an integral part of the deliberative and communicative processes,” Gravel, 408 U.S. at 625, 92 S.Ct. 2614. But the presumption is, at a minimum, overinclusive and therefore inconsistent with the Court’s practice of being “careful not to extend the scope of the protection further than its purposes require.” Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Any number of counter-examples reveal as much: a legislative aide may be discharged because of budgetary cutbacks; a staff member may be demoted solely for consistent tardiness; a person seeking a top-level staff position might be rejected for having a poor college transcript; and so forth. That the person targeted by the personnel decision performs duties “directly related to ... the legislative process,” *12 Browning, 789 F.2d at 929 (emphasis removed), is not enough — conduct must be “part of,” not merely “related to,” the “due functioning” of the “legislative process” to be protected by the Speech or Debate Clause, Brewster, 408 U.S. at 514, 92 S.Ct. 2531. At best, that an employee’s duties are directly related to the legislative process establishes merely “some nexus” between the personnel decision and that process. Brewster, 408 U.S. at 528, 92 S.Ct. 2531; see Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 415 (D.C.Cir.1995). We therefore reject Browning’s test for determining when a legislator’s personnel decision is protected by the Speech or Debate Clause.
The Office of Senator Dayton defends Browning on the ground that “[directing one’s alter egos”—that is, legislative aides with duties directly related to the legislative process, see Gravel, 408 U.S. at 616-17, 92 S.Ct. 2614—necessarily “is an integral part of the processes of achieving one’s legislative goals,” because of the duties such employees perform. Br. for Appellant Office of Senator Dayton 20. We see several problems with this formulation. The Speech or Debate Clause protects conduct that is integral to the legislative process, not a Member’s legislative goals. It may be integral to a Member’s legislative goals — indeed, integral even to accomplishing his “constitutionally delegated duties,” id. — to send newsletters to constituents or deliver speeches outside of Congress to generate support for prospective legislation. But such acts are “political,” not “legislative,” and therefore not protected by the Speech or Debate Clause. Brewster, 408 U.S. at 512, 92 S.Ct. 2531; see Hutchinson v. Proxmire, 443 U.S. 111, 131, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979). Another problem with the formulation lies in its assumption that a Member only directs his alter egos with regard to constitutionally protected activities. “That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature.” Gravel, 408 U.S. at 625, 92 S.Ct. 2614. Legislative aides are no different.[20]
The Office of Senator Dayton also relies on Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982)—the presidential immunity case — to defend Browning. In Fitzgerald, the Supreme Court relied on separation of powers principles to grant the President “absolute ... immunity from damages liability for acts within the ‘outer perimeter’ of his official responsibility.” Id. at 756, 102 S.Ct. 2690. It is true that both legislative and presidential immunity are animated by separation of powers principles. But this does not mean that the immunities are coextensive. The President’s immunity is based on his “unique position in the constitutional scheme,” id. at 749, 102 S.Ct. 2690, and the “singular importance of the President’s duties,” id. at 751, 102 S.Ct. 2690. The Court therefore approaches presidential immunity differently. Id. at 749, 102 S.Ct. 2690; see Forrester, 484 U.S. at 224-25, 108 S.Ct. 538; Bastien, 390 F.3d at 1317. Legislative immunity under the Speech or Debate Clause is limited to matters that are part of, or integral to, the due functioning of the legislative process. It is *13 not enough that a Member’s conduct is within the outer perimeter of the legislative process. Cf. Brewster, 408 U.S. at 513-16, 528, 92 S.Ct. 2531.[21]
B.
Without Browning, we are left with the question how the district court should evaluate the Member Offices’ claims to Speech or Debate Clause immunity in these suits.
The Speech or Debate Clause operates as a jurisdictional bar when “the actions upon which [a plaintiff] sought to predicate liability were ‘legislative acts.’ ” McMillan, 412 U.S. at 318, 93 S.Ct. 2018 (quoting Gravel, 408 U.S. at 618, 92 S.Ct. 2614). To determine on what actions a plaintiff sought to predicate liability, we examine the pleadings. See id. at 312, 93 S.Ct. 2018 (finding it “plain ... that the complaint in this case was barred by the Speech or Debate Clause insofar as it sought relief’ for conduct protected by the Clause); Tenney, 341 U.S. at 376, 71 S.Ct. 783 (inquiring “whether from the pleadings it appears that the [legislators] were acting in the sphere of legitimate legislative activity”); see also Brewster, 408 U.S. at 525, 92 S.Ct. 2531 (examining the face of the indictment to determine whether “inquiry into legislative acts or motivation for legislative acts is necessary ... to make out a prima facie case”). In these cases, it does not appear from Fields’s or Hanson’s complaints that either sought to predicate liability on protected conduct. Fields alleges that the Office of Representative Johnson discriminated against her because of her race and gender and retaliated against her when she objected to discriminatory treatment of her co-worker, Elisabeth Howie, and when she filed a complaint with the Office of Compliance. Hanson alleges that Senator Dayton himself discriminated against him because of his heart condition and that the Office of Senator Dayton denied him deserved overtime compensation. In neither case is it “necessary to inquire into how [the Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation” of the Accountability Act. Brewster, 408 U.S. at 526, 92 S.Ct. 2531; compare Bastien, 390 F.3d at 1315-16.[22]
*14 But the fact that Fields and Hanson are able to plead prima facie cases under the Accountability Act without violating the Speech or Debate Clause does not mean the Speech or Debate Clause in no way hinders their suits. When the Clause does not preclude suit altogether, it still “protect[s] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts.” Brewster, 408 U.S. at 508, 92 S.Ct. 2531; Brown & Williamson, 62 F.3d at 415 n. 5 (“Even when properly subject to suit, members of Congress are privileged against the evidentiary use against them of any legislative act, even if the act is not claimed to be itself illegal, but is offered only to show motive .... ” (citing Helstoski, 442 U.S. at 487-89, 99 S.Ct. 2432; Brewster, 408 U.S. at 527, 92 S.Ct. 2531; Johnson, 383 U.S. at 169, 86 S.Ct. 749)). This evidentiary privilege includes a “testimonial privilege.” Brown & Williamson, 62 F.3d at 418. A Member “may not be made to answer” questions — in a deposition, on the witness stand, and so forth — regarding legislative activities. Gravel, 408 U.S. at 616, 92 S.Ct. 2614; see Brown & Williamson, 62 F.3d at 418-21. “Revealing information as to a legislative act ... to a jury” — whether by testimony or other evidence — “would subject a Member to being ‘questioned’ in a place other than the House or Senate, thereby violating the explicit prohibition of the Speech or Debate Clause.” Helstoski, 442 U.S. at 490, 99 S.Ct. 2432.
Thus, even if the challenged personnel decisions are not legislative acts, inquiry into the motivation for those decisions may require inquiry into legislative acts. For example, interactions with legislative staff (which may form part of the basis for personnel actions) are often part of the due functioning of the legislative process. The Supreme Court recognized this in Gravel when it approved an order that, among other things, “forbade questioning any witness including [a congressional aide] ... concerning communications between the Senator and his aides during the term of their employment and related to [a particular] meeting or any other legislative act of the Senator.” Gravel, 408 U.S. at 628-29, 92 S.Ct. 2614 (footnote omitted). The Speech or Debate Clause therefore may preclude some relevant evidence in suits under the Accountability Act.[23]
*15 Most of the claims in these suits allege discrimination and, absent direct evidence of discrimination, are subject to the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[24] That framework — under which a plaintiff proves a prima facie case of discrimination, which the employer rebuts by producing evidence that its conduct was nondiscriminatory, which the plaintiff then seeks to demonstrate is pretextual, see Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) — presents special problems in the context of the Speech or Debate Clause.[25] Liability for discriminatory personnel decisions rests not on the fact that action was taken (“you can’t fire me”), nor on the duties of the employee against whom action was taken (“you can’t fire the chief of staff’), but on the reason that action was taken (“you can’t fire me for that reason”). But what happens when the action was motivated by the employee’s participation in the legislative process?
Suppose a plaintiff sues a Member’s personal office claiming her discharge violated the Accountability Act. Suppose further that she is able to make out a prima facie case of discrimination of one form or another. If the employing office produces evidence — by affidavit, for example — that the personnel decision was made because of the plaintiffs poor performance of conduct that is an integral part of “the due functioning of the [legislative] process,” Brewster, 408 U.S. at 516, 92 S.Ct. 2531 (emphasis removed), then for the plaintiff to carry her burden of persuasion, she must “demonstrate that the proffered reason was not the true reason for the employment decision,” Burdine, 450 U.S. at 256, 101 S.Ct. 1089; see also Smith v. District of Columbia, 430 F.3d 450, 455-56 (D.C.Cir.2005); Murray v. Gilmore, 406 F.3d 708, 713 (D.C.Cir.2005). In many cases, the plaintiff would be unable to do so without “drawing] in question” the legislative activities and the motivations for those activities asserted by the affiant— *16 matters into which the Speech or Debate Clause prohibits judicial inquiry. Brewster, 408 U.S. at 526, 92 S.Ct. 2531 (quoting Johnson, 383 U.S. at 185, 86 S.Ct. 749); see also Helstoski, 442 U.S. at 490, 99 S.Ct. 2432. For example, if a Senator claimed to have fired an employee because speeches the employee wrote did not accurately reflect the Senator’s legislative objectives, the Speech or Debate Clause would preclude the employee from proving her case by demonstrating that the speeches she wrote did in fact accurately reflect the Senator’s legislative objectives. In such a case, if the evidence ultimately bore out the affiant’s account of the plaintiffs discharge, then the very inquiry leading to that conclusion would be unconstitutional. See Helstoski, 442 U.S. at 489, 99 S.Ct. 2432 (“The Clause protects ‘against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.’ ... [References to past legislative acts of a Member cannot be admitted without undermining the values protected by the Clause.” (quoting Brewster, 408 U.S. at 525, 92 S.Ct. 2531)).
In employment discrimination cases under the Accountability Act, then, as in any other employment discrimination case, the defendant will provide evidence of a legitimate nondiscriminatory reason for the discharge. To invoke the Speech or Debate Clause, the employing office should include with this evidence an affidavit from an individual eligible to invoke the Speech or Debate Clause recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiffs performance of conduct protected by the Speech or Debate Clause. The affiant must have personal knowledge of the facts underlying his averment and otherwise must be able to assert a Member’s Speech or Debate Clause immunity. See Gravel, 408 U.S. at 618, 92 S.Ct. 2614; see also id. at 622 n.13, 92 S.Ct. 2614 (“[A]n aide’s claim of privilege can be repudiated and thus waived by the Senator.”).[26] The affidavit must indicate into what “legislative activity” or into what matter integral to the due functioning of the legislative process the plaintiffs suit necessarily will inquire.
With that submission, the district court must then determine whether the asserted activity is in fact protected by the Speech or Debate Clause. If it is, the action most likely must be dismissed, as the failure to rebut a defendant’s evidence with “evidence ... that the[ ] proffered justifications were mere pretext” normally is fatal to a plaintiffs discrimination allegations. Smith, 430 F.3d at 455-56. If the lawsuit does not inquire into legislative motives or question conduct part of or integral to the legislative process, or if the district court determines that the asserted activity is not in fact part of or integral to the legislative process, then the case can go forward. Cf. Minker v. Baltimore Annual Conference of United Methodist Church, 894 F.2d 1354, 1360-61 (D.C.Cir.1990) (noting, in a different context, that where inquiry into a matter was forbidden “even for the purpose of showing it to be pretextual,” the claim need not be dismissed because “it may turn out that the potentially mischievous aspects ... are not contested ... or are subject to entirely neutral methods of proof’ and “[o]nee evidence is offered, the district court will be in a position to control the case”). We need not decide today whether a case in which the plaintiff uses evidence unrelated to legislative acts— such as direct evidence of discrimination or evidence that at the time of discharge the *17 Senator offered a different reason for the employment action from the one alleged in the affidavit — to demonstrate that the defendant’s legislative explanation is pretext requires more questioning of the defendant’s legislative motives than the Speech or Debate Clause allows. We merely note that a plaintiff who seeks to prevail by quarreling with the defendant’s statements about activity protected by the Speech or Debate Clause must fail.
We recognize that in operating this way the Clause effectively may preclude a plaintiffs discrimination suit. But this does not deprive the Accountability Act of all force, as Fields and Hanson suggest. Just as “a Member of Congress may be prosecuted under a criminal statute provided that the Government’s case does not rely on legislative acts or the motivation for legislative acts,” Brewster, 408 U.S. at 512, 92 S.Ct. 2531, so too a Member’s personal office may be liable under the Accountability Act for misconduct provided that the plaintiff can prove his case without inquiring into “legislative acts or the motivation for legislative acts,” id. And a plaintiff whose suit cannot proceed in federal court by operation of the Speech or Debate Clause still may avail himself of the Accountability Act’s administrative complaint procedure. See 2 U.S.C. § 1405.
Accordingly, we now reject the Browning framework and affirm the judgments below because the Speech or Debate Clause does not bar jurisdiction in these cases.

Affirmed.

. Although we do not ordinarily have jurisdiction to review an order denying a motion to dismiss because such an order is not ''final” under 28 U.S.C. § 1291, Bombardier Corp. v. Nat'l R.R. Passenger Corp., 333 F.3d 250, 253 (D.C.Cir.2003), ”[i]ssues of Speech or Debate Clause immunity may be immediately appealed,” Browning, 789 F.2d at 926 n. 6 (citing Helstoski v. Meanor, 442 U.S. 500, 506, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979)).

. Of particular relevance here, the Accountability Act incorporates portions of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, the Family and Medical Leave Act of 1993, Pub.L. No. 103-3, 107 Stat. 6 (codified as amended in scattered sections of Titles 2, 5, and 29 of the U.S. Code), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796l. See 2 U.S.C. § 1302(a).

. The statute also protects former employees and applicants for employment. 2 U.S.C. § 1301(4).

. The parties agree that Hanson spent much of his time working on the Health Care Help Line, but they disagree about whether this and other assistance Hanson provided to Senator Dayton constituted legislative activities or merely "constituent services.”

. The Office of Senator Dayton later filed an answer denying Hanson’s allegations.

. The Court characterized its decisions interpreting the Speech or Debate Clause as being "careful not to extend the scope of the [Clause's] protection further than its purposes require.” 484 U.S. at 224, 108 S.Ct. 538. The Court described the President’s absolute immunity as resting on the President's " 'unique position in the constitutional scheme.' ” Id. at 225, 108 S.Ct. 538 (quoting Fitzgerald, 457 U.S. at 749, 102 S.Ct. 2690).

. After midnight of the first day of the 104th Congress, the House passed the Act with little debate and without a committee hearing or a committee vote; the Senate passed its version a few days later, again with scarcely any debate and no hearings; there was no conference committee; and even the Senate bill's sponsor lamented the lack of consideration given to this legislation. See James T. O'Reilly, Collision in the Congress: Congressional Accountability, Workplace Conflict, and the Separation of Powers, 5 Geo. Mason L. Rev. 1, 3-4 (1996).

. The Speech or Debate Clause was adopted by the Founders "without discussion and without opposition.” Johnson, 383 U.S. at 177, 86 S.Ct. 749; see 5 The Debates in the Several State Conventions, on the Adoption of the Federal Constitution, as Recommended by the General Convention at Philadelphia, in 1787, at 378, 406 (Jonathan Elliot ed., 2d ed. William S. Hein & Co. 1996) (1891); 2 The Records of the Federal Convention of 1787, at 246 (Max Farrand ed., 1966). The historical antecedents of the Clause are discussed in Justice Frankfurter's opinion for the Court in Tenney, 341 U.S. at 372-75, 71 S.Ct. 783, and *9 in Justice Harlan's opinion for the Court in Johnson, 383 U.S. at 177-83, 86 S.Ct. 749. See also Powell, 395 U.S. at 502-03, 89 S.Ct. 1944; Gravel, 408 U.S. at 652-59, 92 S.Ct. 2614 (Brennan, J., dissenting); 2 The Founders' Constitution 318-45 (Philip B. Kurland & Ralph Lerner eds., 1987).

. See Gravel, 408 U.S. at 616-18, 92 S.Ct. 2614; see also McMillan, 412 U.S. at 312-13, 93 S.Ct. 2018; Tenney, 341 U.S. at 379, 71 S.Ct. 783.

. Cf. Forrester v. White, 484 U.S. 219, 228-29, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); Gross v. Winter, 876 F.2d 165, 170-72 (D.C.Cir.1989).

. Cf. Bogan v. Scott-Harris, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); Rateree v. Rockett, 852 F.2d 946, 950-51 (7th Cir.1988).

.See, e.g., Gravel, 408 U.S. at 625, 92 S.Ct. 2614 ("The heart of the Clause is speech or debate in either House.”); Brewster, 408 U.S. at 512, 92 S.Ct. 2531 ("A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it.... [T]he Speech or Debate Clause prohibits inquiry only into those things generally said or done in the House or the Senate in the performance of official duties and into the motivation for those acts.”); Kilbourn, 103 U.S. at 204 (protecting "things generally done in a session of the House by one of its members in relation to the business before it”); see also Coffin v. Coffin, 4 Mass. (1 Tyng) 1, 31 (1808) ("[I]t must appear that some language or conduct of his, in the character of a representative, is the foundation of the prosecution, for in no other character can he claim the privilege.”).

.Over the years, the Supreme ' Court has articulated a number of different formulations to describe what the Speech or Debate Clause protects. See, e.g., Helstoski, 442 U.S. at 489, 99 S.Ct. 2432 ("The Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts. It precludes any showing of how [a legislator] acted, voted, or decided.” (alteration in original; citation and internal quotation marks omitted)); U.S. Servicemen’s Fund, 421 U.S. at 501, 95 S.Ct. 1813 ("The question to be resolved is whether the actions of the [Member] fall within the 'sphere of legitimate legislative activity.’ ” (footnote omitted)); Johnson, 383 U.S. at 180, 86 S.Ct. 749 ("[A] charge ... that the Congressman’s conduct was improperly motivated ... is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry.”); Tenney, 341 U.S. at 376, 71 S.Ct. 783 (inquiring "whether from the pleadings it appears that the defendants were acting in the sphere of legitimate legislative activity”); see also Coffin, 4 Mass. (1 Tyng) at 27 (protecting "every thing said or done by [a Member] in the exercise of the functions of that office”).

. Tenney, 341 U.S. at 374, 71 S.Ct. 783 (quoting Coffin, 4 Mass. (1 Tyng) at 27); accord Brewster, 408 U.S. at 526, 92 S.Ct. 2531 (protecting "how [a Member] spoke, how he debated”); see also Johnson, 383 U.S. at 180, 86 S.Ct. 749 ("[T]he Speech or Debate Clause extends at least so far as to prevent [conspiring to give a speech in the House in exchange for remuneration] from being made the basis of a criminal charge against a member of Congress .... ”). This, of course, is obvious from the text of the Speech or Debate Clause. U.S. Const. art. I, § 6.

. See Kilbourn, 103 U.S. at 204 (protecting "resolutions offered”); see also Brewster, 408 U.S. at 526, 92 S.Ct. 2531 (protecting "anything [a Member] did in the chamber or in committee”); Tenney, 341 U.S. at 374, 71 S.Ct. 783 (protecting " 'every other act resulting from the nature, and in the execution, of the office' ”) (quoting Coffin, 4 Mass. (1 Tyng) at 27)).

. See Brewster, 408 U.S. at 526, 92 S.Ct. 2531 (protecting “how [a Member] voted”); Tenney, 341 U.S. at 374, 71 S.Ct. 783 (protecting " 'the giving of a vote’ ”) (quoting Coffin, 4 Mass. (1 Tyng) at 27)); Kilbourn, 103 U.S. at 204 (protecting “the act of voting, whether it is done vocally or by passing between the tellers”).

. See McMillan, 412 U.S. at 312, 93 S.Ct. 2018 ("[A] published report may, without losing Speech or Debate Clause protection, be distributed to and used for legislative purposes by Members of Congress, congressional committees, and institutional or individual legislative functionaries.”); id. at 313, 93 S.Ct. 2018 (protecting "preparing a report where [the challenged materials] were reproduced, and authorizing the publication and distribution of that report”); Tenney, 341 U.S. at 374, 71 S.Ct. 783 (protecting "the making of a written report”); Kilbourn, 103 U.S. at 204 (protecting "written reports presented in [the legislative] body by its committees”).

. See U.S. Servicemen's Fund, 421 U.S. at 504, 95 S.Ct. 1813 (“The power to investigate and to do so through compulsory process plainly falls within [the definition of legislative activity].”); id. ("Issuance of subpoenas ... has long been held to be a legitimate use by Congress of its power to investigate.”); McMillan, 412 U.S. at 313, 93 S.Ct. 2018 (protecting the "act[] of authorizing an investigation pursuant to which the subject materials were gathered”); Tenney, 341 U.S. at 377, 71 S.Ct. 783 ("Investigations, whether by standing or special committees, are an established part of representative government.”).

. McMillan, 412 U.S. at 312, 93 S.Ct. 2018 ("[I]t is plain to us that the complaint in this case was barred by the Speech or Debate Clause insofar as it sought relief ... for introducing material at Committee hearings for referring the Report that included the material to the Speaker of the House, and for voting for publication of the report.”); id. at 313, 93 S.Ct. 2018 (protecting the act of "holding hearings where the [challenged] materials were presented”).

. We have recognized that a "Member’s ability to do his job as a legislator effectively is tied ... to the Member’s relationship with the public and in particular his constituents and colleagues in the Congress.” Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 665 (D.C.Cir.2006). While there is no doubt a "clear nexus” between a personnel decision involving an employee with legislative duties and the Member’s "ability to carry out his representative responsibilities effectively,” id. at 665-66, a "nexus” alone is insufficient to trigger the protections of the Speech or Debate Clause, Brewster, 408 U.S. at 528, 92 S.Ct. 2531.

. There are other differences. Presidential immunity, for instance, "does not extend indiscriminately to the President’s personal aides or to Cabinet level officers," Forrester, 484 U.S. at 225, 108 S.Ct. 538 (citations omitted), while Speech or Debate Clause immunity may be invoked by a Member's "aides insofar as the[ir] conduct ... would be a protected legislative act if performed by the Member himself," Gravel, 408 U.S. at 618, 92 S.Ct. 2614.

. Because the complaints are not predicated on legislative acts, Judge Brown’s concurrence is mistaken in thinking it necessary to decide whether the defendant — that is, the personal office of the Member — is equivalent to the Member for the purpose of invoking the jurisdictional bar of the Speech or Debate Clause. To prove the lack of equivalency in the abstract — which misapplies the law for the reasons Judge Tatel gives in his separate opinion — Judge Brown writes that "nothing in the Act suggests that the member can make final litigation decisions on behalf of the employing office.” Op. of Judge Brown 28. This is not only irrelevant but impossible. Litigation decisions are made by the client, on the advice of counsel. The attorney representing the Member’s office is not a free agent. His client is the personal office of the Member, which consists of the Member and his staff. Who is in charge of the office and who makes the decisions for the office? The Member of course.
Judge Brown argues that a Member's personal office cannot invoke the Clause on the Member’s behalf because it "is not a person, nor a sovereign government, nor a branch of government, nor an agency created by statute, nor a chartered corporation, nor a trust, nor a partnership.” Op. of Judge Brown 27. The same could be said of congressional commit *14 tees, which fall within the Accountability Act's definition of "employing office.” 2 U.S.C. § 1301(9). Yet the Supreme Court has held that legislative committees may invoke the Clause. See Tenney, 341 U.S. at 379, 71 S.Ct. 783. Precedent in this circuit is to the same effect. See Consumers Union v. Periodical Correspondents’ Ass'n, 515 F.2d 1341 (D.C.Cir.1975). Judge Brown cannot square her position with Tenney, which the Supreme Court treats as a Speech or Debate Clause case, Powell, 395 U.S. at 501, 89 S.Ct. 1944, or with Consumers Union.
Judge Brown also thinks it significant that "an employee in the personal office of a member is in truth an employee of Congress" because salary payments are administered centrally by the Secretary of the Senate and the Chief Administrative Officer of the House of Representatives. See Op. of Judge Brown 27. That is also true of legislative aides, who are able to invoke the Clause in certain circumstances, see Gravel, 408 U.S. at 621-22, 92 S.Ct. 2614 — indeed it is true even of Members. These matters, as well as the exceedingly odd idea that a Member’s staffing decisions are made "on behalf of Congress” rather than the Member, Op. of Judge Brown 27, simply have no bearing on the issues before us.

. Judge Brown’s concurrence states that "there is little reason to believe that allowing these suits to proceed will threaten legislative independence or unduly involve the judicial branch in the affairs of the legislative branch.” Op. of Judge Brown 29. This speculation has no basis in reality. The Accountability Act authorizes suits based on conduct occurring in a Member’s personal office, see 2 U.S.C. § 1408(b), which necessarily calls into question the actions of Members or their aides.

. Fields alleges racial and gender discrimination in violation of 2 U.S.C. § 1311, which incorporates § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, to which the McDonnell Douglas framework applies, see McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. 1817. She also alleges retaliation under 2 U.S.C. § 1317(a), to which the McDonnell Douglas framework presumably applies. See Broderick v. Donaldson, 437 F.3d 1226, 1231-32 (D.C.Cir.2006). Hanson alleges disability discrimination in violation of 2 U.S.C. § 1311(a)(3), which incorporates § 501 of the Rehabilitation Act, 29 U.S.C. § 791, and §§ 102-104 of the Americans with Disabilities Act, 42 U.S.C. §§ 12112-12114, both of which are subject to the McDonnell Douglas framework. See Barth v. Gelb, 2 F.3d 1180, 1185-86 (D.C.Cir.1993) (Rehabilitation Act); Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C.Cir.2001) (en banc) (Disabilities Act).

. Not all of the claims in the complaints allege discrimination. Fields and Hanson both, allege violations of 2 U.S.C. § 1313, which incorporates certain provisions of the Fair Labor Standards Act, but to which the McDonnell Douglas framework does not apply. See, e.g., Thompson v. Sawyer, 678 F.2d 257, 270-71 (D.C.Cir.1982) (discussing equal pay discrimination in violation of 29 U.S.C. § 206(d)); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (discussing burden allocation in suits seeking overtime compensation under the Fair Labor Standards Act). (Hanson also alleges a nondescript violation of 2 U.S.C. § 1312, which incorporates §§ 101— 105 of the Family and Medical Leave Act, 29 U.S.C. §§ 2611-2615, but the complaint does not give sufficient detail to know whether the McDonnell Douglas framework will apply to this claim.) Nondiscrimination claims such as these, which may give rise to liability regardless of the employer’s motivation, are unlikely to present the problems discussed above.

. A plaintiff therefore may challenge a defendant’s eligibility to invoke the Speech or Debate Clause by arguing that the predicates for doing so under Gravel are not satisfied.