# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 15, 2013　　　　Decided June 28, 2013

No. 12-5119

LATAUNYA HOWARD,
APPELLANT/CROSS-APPELLEE

v.

THE OFFICE OF THE CHIEF ADMINISTRATIVE OFFICER OF THE
UNITED STATES HOUSE OF REPRESENTATIVES,
APPELLEE/CROSS-APPELLANT

———

Consolidated with 12-5120

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cv-01750)

———

　　*Ross A. Nabatoff* argued the cause for appellant. With him on the briefs was *Stanley M. Brand*. *Andrew D. Herman* entered an appearance.

　　*Kerry W. Kircher*, General Counsel, U.S. House of Representatives, argued the cause for appellee. With him on the briefs were *William Pittard*, Deputy General Counsel, *Christine Davenport*, Senior Assistant Counsel, and *Todd B. Tatelman*, *Mary Beth Walker*, and *Eleni M. Roumel*, Assistant Counsel.

Before: GARLAND, *Chief Judge*, KAVANAUGH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

EDWARDS, *Senior Circuit Judge*: This appeal requires the court to consider whether the Speech or Debate Clause of the Constitution, U.S. CONST. art. I, § 6, cl. 1, bars this lawsuit by LaTaunya Howard against her former employer, the Office of the Chief Administrative Officer ("OCAO") of the United States House of Representatives, for alleged racial discrimination and retaliation in violation of the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301-1438. Section 404(2) of the CAA creates a cause of action for covered employees in the legislative branch to sue in federal court for violations of the statute. Article I, section 6, in turn, provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." And "[t]he Speech or Debate Clause operates as a jurisdictional bar when the actions upon which a plaintiff [seeks] to predicate liability [are] legislative acts." *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006) (en banc) (quotations, citations, and alterations omitted) *appeal dismissed and cert. denied sub nom. Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511 (2007).

The CAA "does nothing to a Member's Speech or Debate Clause immunity." *Id.* at 8. However, "a Member's personal office may be liable under the [CAA] for misconduct provided that the plaintiff can prove his case without inquiring into legislative acts or the motivation for legislative acts." *Id.* at 17 (quotations and citation omitted). This is so because "[t]he Speech or Debate Clause . . . does not prohibit

inquiry into illegal conduct simply because it has *some nexus* to legislative functions, or because it is merely related to, as opposed to part of, the due functioning of the legislative process." *Id.* at 10 (quotations and citations omitted).

In this case, we must determine whether the Speech or Debate Clause requires dismissal of Ms. Howard's suit under the CAA. Ms. Howard, who is African American, was hired by the OCAO as Deputy Budget Director on April 15, 2003; she was promoted to Budget Director in 2006. In January 2009, the position of Budget Director was abolished and Ms. Howard was involuntarily transferred to the position of Senior Advisor. On April 14, 2009, Ms. Howard was terminated by the OCAO for alleged insubordination. She commenced this action in District Court on September 15, 2009. Her complaint alleged "that: (1) her termination was based on her race; (2) her transfer from Budget Director to Senior Advisor constituted a demotion, which was based on her race; (3) she received less pay, by approximately $22,000 per year, than the Caucasian Senior Advisors; and (4) her termination was motivated in part by retaliatory animus stemming from her prior complaints to human resources regarding pay disparities and other issues." *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 793 F. Supp. 2d 294, 297 (D.D.C. 2011). The first, second, and fourth of these claims are before us on appeal.

The OCAO moved to dismiss the action in the District Court on the ground that Ms. Howard could not prove her claims without inquiring into matters protected by the Speech or Debate Clause. *Id.* at 295. The District Court denied the OCAO's motion as to Ms. Howard's claim that her transfer was an unlawful demotion based on her race. *Id.* at 308. However, the District Court held that Ms. Howard's claims that her termination from the OCAO was motivated by her race and by retaliatory animus must be dismissed "because

they cannot proceed without inquiry into actions – specifically, communications – that are shielded by the Speech or Debate Clause." *Id.* On January 4, 2012, the District Court granted Ms. Howard's Motion to Certify for Interlocutory Appeal, *Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*, 840 F. Supp. 2d 52 (D.D.C. 2012); and on April 13, 2012, this court granted Ms. Howard's Petition for Permission to Appeal, *In re Howard*, 2012 U.S. App. LEXIS 7593 (D.C. Cir. Apr. 13, 2012). We have jurisdiction over Ms. Howard's appeal and the OCAO's cross-appeal pursuant to 28 U.S.C. § 1292(b).

Both sides agree that the disputed adverse actions – Ms. Howard's alleged demotion and termination – are not legislative acts. Hence, there is no jurisdictional bar to this action. The question in this case is whether Ms. Howard's claims are precluded or limited by the evidentiary, testimonial, or non-disclosure privileges that emanate from the Speech or Debate Clause. *See Fields*, 459 F.3d at 14 (explaining that even "[w]hen the Clause does not preclude suit altogether, it still protect[s] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts" (quotations and citation omitted)).

It is clear that, based on the parties' submissions to the District Court, Ms. Howard's demotion claim is not precluded. Daniel Beard, who was the Chief Administrative Officer ("CAO"), submitted an affidavit ("Beard Affidavit") to the District Court stating three reasons to support Ms. Howard's demotion. As we explain below, it is undisputed that the first two reasons and part of the third reason do not implicate the Speech or Debate Clause. The remaining reason is that Ms. Howard communicated to the Committee on Appropriations information that reflected her own preferences regarding the House budget rather than the views of the CAO. An attempt to quarrel with this allegation might well create a

Speech or Debate Clause problem, but Ms. Howard stipulates that she communicated her personal views. Her only claim is that this is not what motivated her alleged demotion. In other words, Ms. Howard contends that she must "be afforded a fair opportunity to show that [the OCAO's] stated reason [for her involuntary transfer] was in fact pretext." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). The District Court correctly held that "[i]f, under *Fields*, Howard's transfer was not a legislative act, and if Howard can prove that the [O]CAO's justification for her transfer was not the real reason behind it – without probing whether, how, or why she actually communicated with committee staff regarding the budget and the appropriations bill – then the Speech or Debate Clause should present no bar to her claim." *Howard*, 793 F. Supp. 2d at 307.

Likewise, Ms. Howard's termination claim is not precluded. The Beard Affidavit asserts that Ms. Howard was terminated because she refused to complete a task she was assigned. Ms. Howard concedes that she did not complete the task, but says that the reason was that she did not have the necessary computer, data access, or staff support. There is an obvious credibility dispute between the parties. However, whether Ms. Howard had the resources and support needed to complete the task to which she was assigned concerns *non-legislative* matters and, thus, does not implicate the Speech or Debate Clause.

In sum, based on the record before us, we hold that the Speech or Debate Clause does not require the dismissal of this action. Ms. Howard may proceed with her all of her claims under the CAA, subject to the applicable strictures of the Speech or Debate Clause. Accordingly, we affirm in part and reverse in part the judgment of District Court and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Facts

Pursuant to House Rule II(4)(a), the CAO "shall have operational and financial responsibility for functions as assigned by the Committee on House Administration." In addition, pursuant to House Rule II(4)(b), the CAO is, *inter alia*, responsible for providing semiannual financial and operational reports to the Committee on House Administration. The OCAO avers that the CAO supports the House Committees on Appropriations and House Administration by providing budget figures, financial analyses, and financial projections. *See* Beard Aff. ¶ 6, *reprinted in* Joint Appendix ("J.A.") 93. Of particular relevance to this case, the CAO is responsible for the Government Contributions Account (the "Account"), "which encompasses the employer-paid portion of [various employment taxes and benefits for all House employees, and] is one of the largest line items in the annual legislative branch appropriations bill." *Id.* ¶ 9, *reprinted in* J.A. 95. The parties agree that the OCAO engages in legislative activities, including many concerning the Account, but that not all of its activities are legislative. The parties also agree that Daniel Beard was the CAO at all times relevant in this case.

LaTaunya Howard avers that she received the highest or second-highest overall rating in her performance evaluations when she served as Deputy Budget Director and Acting Budget Director. In 2006, she was promoted to the position of "Budget Director" – also known as "Director of the Budget Management Directorate" – after a Caucasian male was offered and declined the position. Ms. Howard alleges that she continued to receive high performance ratings throughout her tenure at the OCAO, although she disputed an "unjustifiably lower" evaluation on her last pre-termination evaluation. Pl.'s First Am. Compl. ¶ 29, *reprinted in* J.A. 14.

The OCAO asserts that, as Budget Director, Ms. Howard had major legislative responsibilities, including: preparing a budget for the House of Representatives for upcoming fiscal years; working cooperatively with other non-OCAO offices in the House, including the Committees on Appropriations and House Administration, leadership offices, and others; and communicating budget information to the CAO, the Committees on Appropriations and House Administration, and other employees of the OCAO. Beard Aff. ¶ 8, *reprinted in* J.A. 94.

The parties differ in their explanations as to the reasons for Ms. Howard's involuntary transfer. Ms. Howard alleges that, in January 2009, she was informed that the CAO was reorganizing the OCAO. Most relevantly, the CAO abolished the Budget Management Directorate (and the position of "Budget Director") and gave Ms. Howard the new title of Senior Advisor, reporting to Deputy CAO Ali Qureshi. She further alleges that she was told the position of Budget Director was being eliminated and that she would shift her focus to "analytical work for CAO programs" and would no longer have managerial responsibilities. Pl.'s First Am. Compl. ¶¶ 35-36, *reprinted in* J.A. 15. The OCAO's Answer admits that Howard was told that the budget directorate was being abolished. Answer ¶ 35, *reprinted in* J.A. 38. Ms. Howard further avers that she was told that her reassignment was not "the result of performance issues." Decl. of LaTaunya Howard ¶ 2, *reprinted in* J.A. 157.

By contrast, the Beard Affidavit avers that three factors led to Ms. Howard's transfer:

(a) "Ms. Howard lacked the interpersonal skills to be an effective manager";

(b) Ms. Howard "had analytical skills that were useful to the [OCAO]"; and

(c)   "Ms. Howard made it difficult for [the CAO] to effectively support the legislative activities of the Committees on Appropriations and House Administration by not sharing information with other employees of the [OCAO] who assisted [the CAO] on budget matters, by not listening to other employees of the [OCAO] who assisted [the CAO] on budget matters, and by communicating to the Committee on Appropriations and others information that reflected her own budgetary preferences and views rather than the views of the CAO."

Beard Aff. ¶ 13, *reprinted in* J.A. 97-98.

The OCAO asserts that following her involuntary transfer to Senior Advisor, Ms. Howard was responsible for implementing and analyzing various House policies and programs and for carrying out other duties as assigned by the CAO, including an assignment concerning the Government Contributions Account. *See id.* ¶ 12, *reprinted in* J.A. 96-97.

The parties' contentions regarding the Account assignment diverge. Ms. Howard alleges that on February 13, 2009, the Deputy CAO asked her to work with a colleague "to set up the projection file for the [Account]." Pl.'s First Am. Compl. ¶ 38, *reprinted in* J.A. 16. In its Answer, the OCAO confirmed this. Answer ¶ 38, *reprinted in* J.A. 39. Ms. Howard avers that her colleague was uncooperative and refused to help her complete the assignment. *See* Pl.'s First Am. Compl. ¶ 43, *reprinted in* J.A. 16. Ms. Howard also avers that she did not have access to the database necessary to complete her task. *Id.* ¶ 57, *reprinted in* J.A. 18-19. She further alleges that she repeatedly attempted to speak with the Deputy CAO about her difficulties in getting her colleague to work with her and her inability to gain access to the electronic files she needed to complete the assignment. *Id.* ¶¶ 43-60,

*reprinted in* J.A. 16-19. Ms. Howard alleges that she was terminated for insubordination based on her failure to complete this assignment, despite her efforts to do so. *Id.* ¶ 64, *reprinted in* J.A. 20.

The Beard Affidavit describes Howard's 2009 assignment involving the Account differently, calling it a "one-time, catch-up assignment that resulted from the fact that the Account had not been analyzed and reconciled for several months, *i.e.*, during a period when Ms. Howard, as Budget Director, was responsible for that work." Beard Aff. ¶ 12, *reprinted in* J.A. 97. The OCAO and the Committees on Appropriations and House Administration needed this analysis and reconciliation completed to prepare for March 2009 budget hearings. *See id.* The Beard Affidavit states that, "[b]etween January and April 2009, Mr. Qureshi repeatedly instructed Ms. Howard to complete the work on the . . . Account which he had assigned to her and, throughout this period, Ms. Howard repeatedly refused." *Id.* ¶ 14, *reprinted in* J.A. 98. The Beard Affidavit further asserts that "Ms. Howard had the necessary computer and data access to enable her to complete this task." *Id*.

On April 14, 2009, the OCAO terminated Ms. Howard "because she had repeatedly refused to analyze and reconcile the . . . Account as . . . [she had been] repeatedly instructed." *Id.*

## B. The Decision Below

As noted above, the District Court allowed Ms. Howard's demotion claim to proceed in a limited manner, holding that

> Howard may seek to show that her communications with the [House committees] did not prompt her transfer by showing that such an explanation is contradicted by [the OCAO's] other representations or not reflected in her performance evaluations or other documentation. But she

may not attempt to show that those communications never took place or that they were other than as [the OCAO] described them. Nor may she in any other way probe the nature, extent or substance of those exchanges. This will likely make it more difficult to prove pretext, but that is the result that the Constitution requires.

*Howard*, 793 F. Supp. 2d at 308.

At the same time, the District Court dismissed Howard's termination and retaliation claims, accepting the Beard Affidavit's account of the events surrounding Howard's discharge and concluding that

dismissal of Howard's termination claims reflects . . . that the Clause protects internal legislative branch communications regarding specific legislative activities that are themselves within the scope of the Clause.

*Id.* at 311. Because the District Court found that Howard could not prove that she was not insubordinate without delving into protected legislative activities, it dismissed her termination and retaliation claims. *Id.* at 308-11.

## II. ANALYSIS

### A. Standard of Review

Because this case comes to us on an appeal from a motion to dismiss, we review the District Court decision *de novo.* This is true regardless of whether the OCAO's motion is characterized as one to dismiss for lack of jurisdiction under Rule 12(b)(1), FED. R. CIV. P. 12(b)(1), *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992), or as one to dismiss for failure to state a cause of action under Rule 12(b)(6), FED. R. CIV. P. 12(b)(6), *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

**B. The Speech or Debate Clause**

In furtherance of separation of powers, the Framers sought to "provide some practical security for each [branch of government], against the invasion of the others." THE FEDERALIST NO. 48 (James Madison). The Speech or Debate Clause serves "to insure that the legislative function the Constitution allocates to Congress may be performed independently" without subjecting the legislature to "accountability before a possibly hostile judiciary." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). The Supreme Court has, "[w]ithout exception . . . read the Speech or Debate Clause broadly." *Id.* at 501. Indeed, the Court has held that the protections of the Clause apply "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel v. United States*, 408 U.S. 606, 618 (1972).

The Clause protects legislators from liability for all activities within the "sphere of legitimate legislative activity," *Eastland*, 421 U.S. at 503, including all activities that are

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625. "Legislative activity" is broadly construed, encompassing not only anything "generally done in a session of the House by one of its members in relation to the business before it," *id.* at 624 (quotations and citation omitted), but also "conduct at committee hearings, preparation of committee reports, authorization of committee publications and their internal distribution, and issuance of

subpoenas concerning a subject on which legislation could be had." *McSurely v. McClellan*, 553 F.2d 1277, 1284-85 (D.C. Cir. 1976) (quotations and citations omitted); s*ee also, e.g.*, *id.* at 1296-97 ("[T]he subsequent use of . . . documents by the committee staff in the course of official business is privileged legislative activity."). The Clause also protects staff members' preparations for legislative activities. *See, e.g.*, *Gravel*, 408 U.S. at 628-29.

As a general matter, the Speech or Debate Clause affords three distinct protections: (a) an immunity from "a civil or criminal judgment against a Member because [of] conduct [that] is within the sphere of legitimate legislative activity," *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quotations and citation omitted); (b) an evidentiary privilege, which, in relevant part, bars a party in a civil suit from "[r]evealing information as to a legislative act" for use against a protected party, *United States v. Helstoski*, 442 U.S. 477, 490 (1979); and (c) a testimonial and non-disclosure privilege that prevents a protected party from being compelled to answer questions about legislative activity or produce legislative materials, *see, e.g.*, *United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 659-60 (D.C. Cir. 2007).

## B. The *Fields* Plurality Opinion Framework: Applying the Speech or Debate Clause in Employment Cases

In 1995 Congress enacted the CAA, 2 U.S.C. § 1301 *et seq.*, which extends to certain legislative branch employees the protections of a number of remedial labor and employment statutes, including Title VII of the Civil Rights Act of 1964. *See id.* § 1302(a)(2); 42 U.S.C. § 2000e *et seq.* Among other protections, the CAA bars discrimination based on race, 2 U.S.C. § 1311(a)(1), and includes an anti-retaliation provision, 2 U.S.C. § 1317(a). The statute applies to any employee of the House of Representatives, but explicitly declines to waive any protections afforded by the Speech or

Debate Clause. *See id.* §§ 1301(3)(A), 1413; *see also Fields*, 459 F.3d at 8 (CAA does not waive immunity or privileges afforded by the Speech or Debate Clause).

In *Fields*, the court, sitting en banc, offered a framework for determining when the Speech or Debate Clause requires dismissal of suits brought under the CAA. Unfortunately, the disposition in *Fields* includes no clear majority opinion. The plurality opinion authored by Judge Randolph, who was joined by then-Chief Judge Ginsburg, Judge Henderson, and Judge Tatel, states that "a Member's personal office may be liable under the [CAA] for misconduct provided that the plaintiff can prove his case without inquiring into legislative acts or the motivation for legislative acts." 459 F.3d at 17 (quotations and citation omitted). The opinion by Judge Rogers concurs in part, but expresses the view that the court should have left "open the question of how the Clause may limit evidence offered by parties in CAA litigation and whether the role of the Member's personal office as the defendant under the CAA affects the application of the Clause." *Id.* at 18 (Rogers, J., concurring in part and in the judgment). The opinion by Judge Brown, who was joined by Judge Sentelle and Judge Griffith, concurs in the judgment, but expresses a relatively narrow view of the Speech or Debate Clause. *Id.* at 21-33. (Brown, J., concurring in the judgment).

Judge Tatel's separate concurring opinion aptly explains the principal differences between Judge Randolph's plurality opinion and Judge Brown's concurring opinion:

> Judge Randolph's opinion for the court holds that because neither of the cases before [the court in *Fields*] rests on legislative acts, we have no basis for dismissing them. Judge Randolph then points out that the Speech or Debate Clause may preclude some evidence, that in many employment cases it may preclude the very

> evidence upon which plaintiffs seek to rely, and that if it does, the suit may not proceed. [Judge Brown's] concurrence focuses on whether the defendant functions as a Member's alter ego, arguing that wide variations in Speech or Debate Clause protection hinge on the answer to that question.

*Id.* at 18-19 (Tatel, J., concurring). Although there are four different opinions in *Fields*, none would embrace a result different from the judgment that we reach in this case. Our discussion of *Fields* focuses on Judge Randolph's plurality opinion because, at least in the context of this case, it reflects the broadest view of the Speech or Debate Clause.

As noted in the *Fields* plurality opinion, there are two bases for the application of the Speech or Debate Clause to congressional employment actions. First, some employment decisions themselves constitute legislative acts and are therefore immune from suit under the Clause. *Id.* at 9-10 (plurality opinion). The parties in this case agree that neither Ms. Howard's demotion nor her termination were themselves legislative acts.

Second, the *Fields* plurality opinion states that "[w]hen the [immunity component of the] Clause does not preclude suit altogether," the evidentiary, testimonial, and non-disclosure privileges "still protect[] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts." *Id.* at 14 (quotations, citations, and alterations omitted). In "many cases," the *Fields* plurality opinion notes, it may be impossible to explore the reasons for the challenged employment action without discussing legislative acts and this may lead to the dismissal of CAA claims. *Id.* at 15-16; *see also id.* at 20 (Tatel, J., concurring) (non-disclosure protection under Clause could "preclude[] litigation" of some CAA claims). The question in this case is whether Ms. Howard can pursue her claims under the CAA

without inquiring into legislative acts or the motivation for legislative acts.

In many employment discrimination cases, proof of "pretext" will be crucial to the success of the claimant's case. *See, e.g.*, *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *McDonnell Douglas*, 411 U.S. at 804. Once a plaintiff has made out a *prima facie* case of discrimination and the employer has offered a nondiscriminatory explanation for its actions, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256. In order to show that an employer's stated reason for a contested action was in fact a pretext for proscribed discrimination, an employee may need to adduce evidence regarding the employer's work practices. In the context of cases arising under the CAA, this may require a complaining employee to seek evidence that implicates legislative matters, something that the Speech or Debate Clause may preclude.

The *Fields* plurality opinion addresses the challenges faced by a complaining party who seeks to prove pretext in support of a charge of discrimination under the CAA:

> Suppose a plaintiff sues . . . claiming her discharge violated the [CAA]. Suppose further that she is able to make out a prima facie case of discrimination . . . . If the employing office produces evidence – by affidavit, for example – that the personnel decision was made because of the plaintiff's poor performance of conduct that is an integral part of "the due functioning of the [legislative] process," . . . then for the plaintiff to carry her burden of persuasion, she must "demonstrate that the proffered reason was not the true reason for the employment decision" . . . . In many cases, the plaintiff would be unable to do so without "draw[ing] in question" the legislative activities and the motivations for those

> activities asserted by the affiant – matters into which the Speech or Debate Clause prohibits judicial inquiry. . . .

*Fields*, 459 F.3d at 15-16 (citations omitted). The *Fields* plurality opinion explains that, in order to invoke the Speech or Debate Clause in such cases,

> the employing office should include with [its] evidence an affidavit from an individual eligible to invoke the Speech or Debate Clause recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiff's performance of conduct protected by the Speech or Debate Clause. . . . The affidavit must indicate into what "legislative activity" or into what matter integral to the due functioning of the legislative process the plaintiff's suit necessarily will inquire.

> With that submission, the district court must then determine whether the asserted activity is in fact protected by the Speech or Debate Clause. If it is, the action most likely must be dismissed . . . . We need not decide today whether a case in which the plaintiff uses evidence unrelated to legislative acts – such as . . . evidence that at the time of discharge the [employer] offered a different reason for the employment action from the one alleged in the affidavit – to demonstrate that the defendant's legislative explanation is pretext requires more questioning of the defendant's legislative motives than the Speech or Debate Clause allows. We merely note that a plaintiff who seeks to prevail by quarreling with the defendant's statements about activity protected by the Speech or Debate Clause must fail.

*Id.* at 16-17.

It is noteworthy that the *Fields* plurality opinion does not suggest that the District Court must accept as true *all* allegations contained in an affidavit from an individual eligible to invoke the Speech or Debate Clause; rather it instructs the District Court to determine whether the conduct that forms the basis of the plaintiff-employee's suit is, in fact, protected by the Clause.

Importantly, nothing in the *Fields* plurality opinion prevents an employee who is pursuing an action under the CAA from having "a fair opportunity to show that [the employer's] stated reason [for the disputed adverse action] was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. Given the strictures of the Speech or Debate Clause, a "fair opportunity" means that the complaining party may pursue her claim to the fullest, so long as she can prove her case "without inquiring into legislative acts or the motivation for legislative acts." *Fields*, 459 F.3d at 17 (quotations and citation omitted).

> If the lawsuit does not inquire into legislative motives or question conduct part of or integral to the legislative process, or if the district court determines that the asserted activity is not in fact part of or integral to the legislative process, then the case can go forward.

*Id.* at 16.

The OCAO suggests that an employee should be precluded from seeking to prove pretext once an individual who is eligible to invoke the Speech or Debate Clause has submitted an affidavit that offers a nondiscriminatory explanation for the contested employment action. Nothing in *Fields* or in any decision issued by the Supreme Court supports this view of the Speech or Debate Clause. Indeed, the only reasonable reading of the applicable precedent indicates that a plaintiff-employee may pursue her claims

even after her employer has filed a *Fields* affidavit, provided that she does not contest her employer's conduct of protected legislative activities and that she prove her allegations of pretext using evidence that does not implicate protected legislative matters.

In *United States v. Brewster*, for example, the Supreme Court allowed prosecution of a former Senator who accepted a bribe in exchange for legislative action. *See* 408 U.S. 501, 525-29 (1972). The Court explained that the act of taking the bribe was not legislative in nature, as the government could prove bribery without inquiring into whether the Senator had actually done the legislative deed the bribe was intended to induce. *See id.* The Court concluded that "[t]he only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Id.* at 528. *Fields* says nothing to the contrary.

## C.  The OCAO's "Jurisdictional" Challenge

Before the District Court, the OCAO filed a motion asserting that Ms. Howard's complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The OCAO has renewed this contention on appeal. The arguments offered by the OCAO are misguided.

"The Speech or Debate Clause operates as a jurisdictional bar when the actions upon which [a plaintiff seeks] to predicate liability [are] legislative acts." *Fields*, 459 F.3d at 13 (quotations, citation and alterations omitted). As noted above, the parties in this case agree that the disputed adverse actions – Ms. Howard's alleged demotion and termination – are not legislative acts. Therefore, there is no jurisdictional bar to this action. Accordingly, we will construe OCAO's motion as one to dismiss pursuant to Rule 12(b)(6) for failure

to state a claim. *See, e.g.*, *Fraternal Order of Police Dep't of Corr. Labor Comm. v. Williams*, 375 F.3d 1141, 1143-44 (D.C. Cir. 2004) (construing a Rule 12(b)(1) motion as one arising under 12(b)(6) where the court had jurisdiction to consider the case).

The OCAO's jurisdiction argument relies on its contention that "when you marry the non-disclosure privilege . . . with the likelihood that many of these complaints are going to have to be dismissed at this early stage, in effect what you're talking about is another form of immunity." Tr. of Oral Arg. at 32. In other words, the OCAO seeks to have this court create a new basis for immunity under the Speech or Debate Clause. We decline the invitation. *See Brewster*, 408 U.S. at 528 (explaining that because "[t]he Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions," a defendant "could not . . . obtain[] immunity from prosecution by asserting that the matter being inquired into was related to the motivation for his [legislative actions]").

The OCAO has advanced no credible argument to support the dismissal of Ms. Howard's complaint under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). Ms. Howard's complaint easily satisfies this standard. The OCAO seems to think it is entitled to a dismissal because Ms. Howard may face difficulties in proving her case without delving into protected legislative activities. *See* Br. of OCAO at 50-56. This is not a basis for dismissal of a case under Rule 12(b)(6). A court must

"assess[] the legal feasibility of the complaint, but [may] not weigh the evidence that might be offered to support it." *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).

Under applicable law, to get to trial, a plaintiff like Ms. Howard must "produce[] sufficient evidence that, when taken together, could lead a reasonable jury to conclude that the [employer's] proffered reason [for an adverse employment action] was pretext for racial discrimination." *Evans v. Sebelius*, No. 11-5120, 2013 WL 2122072, at *3 (D.C. Cir. May 17, 2013). Ms. Howard may not be able to meet this standard because of the strictures of the Speech or Debate Clause – which will bar her from inquiring into legislative motives or question conduct part of or integral to the legislative process – but this remains to be seen as the case proceeds.

**D.  Ms. Howard's Demotion Claim**

For the reasons indicated below, we find that the District Court had no basis under Rule 12(b)(1) or Rule 12(b)(6) to dismiss Ms. Howard's claim that her involuntary transfer was a demotion based on her race or to grant judgment in favor of the OCAO on this issue. We agree with the District Court that Ms. Howard will be able to pursue this claim without probing protected legislative activities. Because the District Court allowed this claim to proceed, we affirm its decision and deny OCAO's cross-appeal.

Ms. Howard alleges that at the time of her demotion, she was told that "a decision was made to 'do away with' the Budget Director title," Pl.'s First. Am. Compl. ¶ 35, *reprinted in* J.A. 15, and Appellee's Answer confirms this account. Answer ¶ 35, *reprinted in* J.A. 38. Ms. Howard further alleges that when she asked directly, she was told that her forced transfer was not the result of performance issues. Decl. of

LaTaunya Howard ¶ 2, *reprinted in* J.A. 157. The OCAO does not dispute this assertion.

The Beard Affidavit submitted by the OCAO offers three completely different reasons for Ms. Howard's forced transfer. The first justification in the Beard Affidavit states that "Ms. Howard lacked the interpersonal skills to be an effective manager." Beard Aff. ¶ 13, *reprinted in* J.A. 97. The second justification states that Ms. Howard "had analytical skills that were useful to the [OCAO]." *Id.* The parties agree that Ms. Howard's analytical and managerial abilities do not implicate protected legislative matters. *See* Tr. of Oral Arg. at 60-61 (OCAO conceding that these justifications are non-legislative).

The third asserted justification in the Beard Affidavit includes three parts. It states that Ms. Howard was involuntarily transferred because she "made it difficult for [the CAO] to effectively support the legislative activities of the Committees on Appropriations and House Administration

- by not sharing information with other employees of the [OCAO] who assisted [the CAO] on budget matters,

- by not listening to other employees of the [OCAO] who assisted [the CAO] on budget matters, and

- by communicating to the Committee on Appropriations and others information that reflected her own budgetary preferences and views rather than the views of the CAO."

Beard Aff. ¶ 13, *reprinted in* J.A. 97-98. Ms. Howard concedes that when she pursues her case before the District Court, she will be barred by the Speech or Debate Clause from disputing the accuracy of the OCAO's assertion that she

advanced her own budgetary views rather than those of the CAO. Were she to do this, she would be "quarreling with [the CAO's] statements about activity protected by the Speech or Debate Clause," which the *Fields* plurality opinion explicitly prohibits. 459 F.3d at 17.

Nonetheless, Ms. Howard surely may offer evidence that does not inquire into legislative acts or the motivation for legislative acts in order to demonstrate that the OCAO's alleged reasons for her demotion are pretextual. For example, Ms. Howard may seek to prove pretext by showing that the reasons that the OCAO offered when she was demoted – that her position was being eliminated and that there were no underlying performance deficiencies – differ from the reasons that CAO asserts in the Beard Affidavit. *See, e.g.*, *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (noting that "shifting and inconsistent justifications are probative of pretext" (quotation and citation omitted)); *Czekalski v. Peters*, 475 F.3d 360, 367 (D.C. Cir. 2007) (an employee may pursue her discrimination claim where she "proffered evidence from which a jury could have concluded that each of the" contemporaneous reasons her employer gave "was false, and that [the employer's] subsequent clarifications represented nothing more than back-pedaling" such that "a jury could have concluded that the employer's stated reason was pretextual" (quotation and citation omitted)). By the same token, the OCAO may be able to show that its contemporaneous explanations for Ms. Howard's alleged demotion can be reconciled with the assertions made in the Beard Affidavit. These are matters to be addressed by the District Court in the first instance. The main point here is that the Speech or Debate Clause does not preclude Ms. Howard from pursuing her charge of race discrimination based on her alleged demotion.

### E.   Howard's Termination and Retaliation Claims

For the reasons indicated below, we find that the District Court had no basis under Rule 12(b)(1) or Rule 12(b)(6) to dismiss Ms. Howard's claims that her termination from the OCAO was motivated by her race and by retaliatory animus or to grant judgment in favor of the OCAO on these issues. Ms. Howard will be able to pursue these claims without probing protected legislative activities. Because the District Court dismissed these claims, we reverse its decision, grant Ms. Howard's appeal, and remand the case to allow these claims to proceed.

Ms. Howard avers that she was terminated for her failure to complete an assignment she describes as "set[ting] up the projection file for the [Account]." Pl.'s First. Am. Compl. ¶ 38, *reprinted in* J.A. 16. She alleges that she was not given "access to the [necessary] database," *id.* at ¶ 57, *reprinted in* J.A. 18-19, to complete the task, and that the OCAO employee with whom she was supposed to work was uncooperative and prevented her from completing the assignment. *See id.* at ¶¶ 38-64, *reprinted in* J.A. 16-20. Ms. Howard thus alleges that she was set up to fail and that her April 2009 discharge "was improperly based upon race." *Id.* at ¶ 66, *reprinted in* J.A. 20.

The Beard Affidavit takes issue with Ms. Howard's account of the events leading to her discharge. The affidavit states that:

> Between January and April 2009, Mr. Qureshi repeatedly instructed Ms. Howard to complete the work on the Government Contributions Account which he had assigned to her and, throughout this period, Ms. Howard repeatedly refused. Ms. Howard had the necessary computer and data access to enable her to complete this task. On or about April 14, 2009, Mr. Qureshi, with my

approval, informed Ms. Howard that her employment was terminated because she had repeatedly refused to analyze and reconcile the Government Contributions Account as I, through Mr. Qureshi, had repeatedly instructed her to do.

Beard Aff. ¶ 14, *reprinted in* J.A. 98.

In sum, the CAO contends that Ms. Howard had access to all of the necessary files and resources and was terminated for insubordination. Ms. Howard, in turn, asserts that she lacked access to the necessary resources and support and was then terminated for failures caused by the OCAO. This is a classic "he-said-she-said" dispute, calling into question the credibility of Ms. Howard, Mr. Beard, and other members of the OCAO staff. The dispute has nothing whatsoever to do with protected legislative activities.

The Beard Affidavit's account of the reasons for Ms. Howard's termination certainly does not implicate legislative activities. To the contrary, the assertions in the Beard Affidavit regarding Ms. Howard's discharge relate to Ms. Howard's failure to perform an assigned job, not the particular duties associated with the job or the justifications for the assignment. OCAO asserts that the duties assigned to Ms. Howard would have involved protected legislative activities had she undertaken her assignment. This is irrelevant, however, because Ms. Howard has not raised any issue about those duties, nor does she propose to probe any aspect of the Account assignment or the motives giving rise to the assignment. Rather, Ms. Howard claims that she was assigned to perform a job and then denied the necessary resources and support to complete the work.

At Oral Argument, the OCAO conceded, as it must, that an investigation into activities in proximity to the legislative process does not necessarily require a probe into protected

legislative activity. *See* Tr. of Oral Arg. at 48; *see also Brewster*, 408 U.S. at 528. For example, a file clerk assigned to deliver legislative documents from one office to another, where all deliveries arrive in sealed envelopes, could be terminated for failing to deliver the envelopes as assigned. If the dispute surrounding the file clerk's termination concerned instructions given to the clerk, the times of the pick-ups and deliveries of his cargo, his attitude, his attire, what he said during his delivery route, or his race – and did not concern the contents of the envelopes – then any inquiry into the cause of his termination could proceed without implicating the Speech or Debate Clause. Even though the file clerk's assigned tasks may be seen as importantly *related to* legislative activities, the tasks themselves are not legislative activities that implicate the Speech or Debate Clause.

Similarly, a food service worker whose principal responsibilities are for food preparation and service, as in *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984), may inquire into the reasons for his termination without implicating any protected legislative activities. The Speech or Debate Clause would not bar the worker's challenge to his termination, even if he worked in the House of Representatives' dining room.

Ms. Howard's situation is similar to these examples. Therefore, she may pursue her termination and retaliation claims. As the Court noted in *Gravel*, conduct that is merely related to or taken in support of protected legislative activities is not itself protected when relief can be afforded "without proof of a legislative act or the motives or purposes underlying such an act." 408 U.S. at 621. We find nothing in Ms. Howard's termination and retaliation claims that implicate the Speech or Debate Clause. Her allegations concern access to resources and staff support. The details of her work assignment are not at issue. Therefore, there is little doubt that she can be afforded relief on her claims "without

proof of a legislative act or the motives or purposes underlying such an act." *Id.* The credibility issues that have been raised in connection with Ms. Howard's termination and retaliation claims are properly left to the District Court in the first instance, as is routinely done in cases involving charges of race discrimination in employment.

## IV. CONCLUSION

For the reasons discussed above, we affirm the judgment of the District Court in part, reverse in part, and remand to allow all of Ms. Howard's claims to proceed.

KAVANAUGH, *Circuit Judge*, dissenting:  Article I's Speech or Debate Clause provides that "for any Speech or Debate in either House," Senators and Representatives "shall not be questioned in any other Place."  U.S. CONST. art. I, § 6, cl. 1.  The Clause is an important element of the Constitution's separation of powers, protecting the independence of the Article I Legislature from encroachment by the Article II Executive or the Article III Judiciary.  The Clause's text, history, and precedent can create significant obstacles when a criminal or civil case is brought in an Article III federal court against a Member of Congress or congressional office.

This case involves a suit under the Congressional Accountability Act of 1995.  That Act created a cause of action for congressional employees who claim unlawful discrimination by congressional employing offices.  2 U.S.C. § 1408.  An "employing office" includes, among other congressional offices, (i) the personal office of a Member of the House of Representatives or of a Senator, (ii) a House or Senate committee, and (iii) any other office with the authority to make personnel decisions about congressional employees.  *Id.* § 1301(9).

Under the Act, employees may file complaints with Congress's Office of Compliance and, if successful, may obtain all the remedies they could obtain in a federal court discrimination suit.  *Id.* §§ 1311(b), 1404(1), 1405(a).  Importantly, because the Office of Compliance process occurs within the Legislative Branch, not in an "other Place," the Speech or Debate Clause does not pose an issue in those cases.

The Act alternatively permits an employee to bring a discrimination suit in federal district court.  *Id.* §§ 1404(2),

1408(a). But in those federal court suits, the Speech or Debate Clause applies. *Id.* § 1413.[1]

Howard brought her discrimination suit in federal court against the congressional Office of the Chief Administrative Officer. The question here is how the Speech or Debate Clause operates in employment discrimination cases brought in federal court against congressional offices. In discrimination cases generally, the plaintiff employee alleges that a certain employment action occurred because of his or her race or sex, for example. The employer responds by stating a neutral reason for the employment action. Then, the employee tries to prove that the employer's stated reason was either not factually true or not the actual basis for the decision, and that the decision was based on race or sex. The employer meanwhile tries to prove that the stated reason was factually true and was the actual basis for the decision, and thus that the decision was not based on race or sex. *See generally Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-95 (D.C. Cir. 2008).

When employee plaintiffs sue congressional offices in federal court, difficulty arises if the employer's stated reason for the employment action in question – for the firing, demotion, or the like – is the plaintiff's performance of legislative activity. Difficulty arises in those circumstances because the Speech or Debate Clause, as construed by the Supreme Court, establishes a privilege that as relevant here (i) prevents use of evidence of legislative activities against Members and (ii) protects Members from being forced to

---

[1] The employee's choice to proceed through Congress's Office of Compliance or in federal court is irrevocable, meaning the plaintiff cannot go back if unhappy with the initially chosen forum. *See* 2 U.S.C. § 1404.

disclose information about legislative activities. *See United States v. Helstoski*, 442 U.S. 477, 489-90 (1979); *Gravel v. United States*, 408 U.S. 606, 616 (1972).

In *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006), the en banc Court of eight judges considered the application of the Speech or Debate Clause to discrimination suits brought under the Congressional Accountability Act. For four judges, Judge Randolph's opinion concluded that, when the defendant employer states that the challenged employment action was based on legislative activity protected by the Speech or Debate Clause, the case "most likely must be dismissed." *Id.* at 16 (plurality opinion of Randolph, J.). For three other judges, Judge Brown's opinion likewise stated that, assuming congressional offices could assert the protections of the Speech or Debate Clause as a majority of the en banc Court had separately held, then lawsuits "that will inevitably necessitate an inquiry into" protected legislative activity would be barred. *Id.* at 30 n.3 (Brown, J., concurring in the judgment). So seven of the eight Judges in *Fields* indicated support for a rule that would usually require dismissal in employment discrimination cases when the employer's stated reason for the action involves the plaintiff's performance of legislative activity.

Here, as the parties and the majority opinion accept, we should follow Judge Randolph's *Fields* opinion. Under that opinion, when the employer's stated reason involves the plaintiff's performance of legislative activity, the plaintiff may not dispute the factual accuracy of the employer's stated reason. *See id.* at 16-17 (plurality opinion of Randolph, J.). A question left open in *Fields* was whether the plaintiff could nonetheless dispute whether the defendant's stated reason was the actual basis for the defendant's decision or was just a

pretext for discrimination. *See id.* This case requires us to resolve that open question.

Under *Fields*, all agree that the initial task in a case where an employing office has submitted an affidavit invoking the Speech or Debate Clause is to determine whether the reason asserted by the employer for the employment action encompasses legislative activity protected by the Speech or Debate Clause. In this case, that inquiry is straightforward. The reasons asserted by the defendant Chief Administrative Officer for the adverse employment actions included Howard's inadequate performance of legislative activity. On the demotion claim, the Chief Administrative Officer stated that he transferred Howard in part because Howard had communicated her personal preferences regarding the Legislative Branch's budget to congressional committees, rather than communicating the preferences of the Office of the Chief Administrative Officer. J.A. 97-98. On the termination claim, the Chief Administrative Officer stated that he ultimately terminated Howard's employment because Howard had refused to perform budget analysis for use by those congressional committees. J.A. 98. As this Court has previously recognized, a staff member's activities of this sort are legislative activities that fall squarely within the ambit of the Speech or Debate Clause. *See McSurely v. McClellan*, 553 F.2d 1277, 1284-87 (D.C. Cir. 1976); *see also Gravel*, 408 U.S. at 628-29 (Speech or Debate Clause protects preparations for committee hearings and internal communications related to legislative activity).

Once we conclude (as we must here) that the employer's asserted reason for the decision involves legislative activity protected by the Speech or Debate Clause, I believe (unlike the majority opinion) that the case must come to an end. I do not see how a plaintiff employee such as Howard can attempt

to prove either that she in fact adequately performed her legislative activities *or* that her performance of legislative activities was not the actual reason for the employment action without forcing the employer to produce evidence that she did not adequately perform her legislative activities and that her poor performance of legislative activities was the actual reason for the employment action. But the Speech or Debate Clause protects the defendant from being forced to produce such evidence of legislative activities. *See United States v. Rostenkowski*, 59 F.3d 1291, 1303 (D.C. Cir. 1995) (distinguishing voluntary production of protected evidence from production that "is necessary"); *see also United States v. Swindall*, 971 F.2d 1531, 1546 (11th Cir. 1992) (permissive inference violated Speech or Debate Clause where it "virtually compel[led] Swindall to justify his legislative actions").

Trying to thread the needle and avoid dismissal of Howard's claims, the majority opinion says that, although a plaintiff per *Fields* may not challenge the factual accuracy of the employer's stated reason for the decision, a plaintiff may still try to show that the employer's stated reason – namely, the employee's poor performance of legislative activities – was a pretext for discrimination and not the actual reason for the employment decision. But that thread-the-needle approach simply won't work to avoid the Speech or Debate Clause problem. In response to such evidence and arguments from the plaintiff, the defendant necessarily will have to prove at trial that the plaintiff's unsatisfactory performance of legislative activities was the actual reason for the decision – that is, was not a pretext. In the real world of trial litigation, that in turn will obviously require the defendant to produce evidence about the plaintiff's allegedly shoddy performance of those legislative activities. *See Burdine*, 450 U.S. at 258 ("[T]he defendant . . . retains an incentive to persuade the trier

of fact that the employment decision was lawful.  Thus, the defendant normally will attempt to prove the factual basis for its explanation.").  But that is precisely what the Speech or Debate Clause protects congressional defendants from being forced to do – namely, from being forced to produce evidence of legislative activities in federal court.

Put simply, the majority opinion's test is inconsistent with Speech or Debate Clause principles because it necessarily will require congressional employers to either produce evidence of legislative activities or risk liability.  Under the Constitution's Speech or Debate Clause, Article I congressional employers cannot be put to this kind of choice by an Article III federal court.

Notably, as we explained in *Fields*, employees in congressional offices who suffer discrimination are not without a remedy.  Rather, "a plaintiff whose suit cannot proceed in federal court by operation of the Speech or Debate Clause still may avail himself of the Accountability Act's administrative complaint procedure" through Congress's Office of Compliance. *Fields*, 459 F.3d at 17.  The Speech or Debate Clause does not apply there because that process takes place within Congress, not in an "other Place."  U.S. CONST. art. I, § 6, cl. 1. We are informed that numerous congressional employees have availed themselves of that Office of Compliance process and have obtained remedies.

One final note:  The majority opinion's approach in this case not only is inconsistent with the Speech or Debate Clause, but also creates a major real-world problem.  Under the majority opinion's approach, plaintiffs may be encouraged to forgo the Office of Compliance process in Congress and may be seduced instead into federal court.  Once in federal court, however, a plaintiff will find that the suit is seriously

hampered because, as *Fields* concluded and the majority opinion here acknowledges, the plaintiff cannot take issue with the employer's factual assertions about the plaintiff's poor performance of legislative activities. A plaintiff saddled with a stipulation that she was really lousy at performing her legislative duties is not a plaintiff who is likely to even get to trial, much less to win, in a discrimination case. So the majority opinion's promise of a federal court forum in these circumstances is a fairly empty promise. And the false hope offered by the majority opinion will undoubtedly deprive discrimination victims who file in federal court of remedies that they may well have obtained through the Office of Compliance process in Congress – where, for example, employees could dispute the alleged factual basis for the employer's decision and thereby give themselves a real shot at prevailing on their discrimination claims. I would encourage counsel for would-be plaintiffs in these kinds of cases to carefully consider the difficulty of a federal court suit – even under the majority opinion's approach – before they advise clients to irrevocably bypass the Office of Compliance option, where they would not face such extraordinary hurdles to prevailing.

\* \* \*

Based on the Speech or Debate Clause, I would hold that a district court must dismiss a discrimination suit against a congressional employing office if the employer's stated reason for the employment decision is the plaintiff's performance of legislative activities. Therefore, I would dismiss Howard's demotion and termination claims. I respectfully dissent.